# CHARLESTON.

SWICK V. BASSELL.

Submitted October 27, 1915.   Decided November 2, 1915.

1. INDICTMENT AND INFORMATION—*Offense Charged—Embezzlement— Larceny.*

   On a common law ·indictment for larceny, evidence of embezzle-ment is admissible and, on it, there may be a conviction of the latter offense, if the evidence is sufficient.   (p. 82).

2. MALICIOUS PROSECUTION—*Probable Cause—Evidence.*

   If a criminal prosecution, as instituted, was not maintainable because commenced in the wrong county or the wrong court, but the facts and circumstances known to the prosecutor constituted probable cause for prosecution in the proper county or court, they are ad-missible in an action for malicious prosecution, brought by the accused, after termination of the criminal proceeding, to prove the existence of probable cause.   (p. 81).

3. SAME—*Instructions—Probable Cause—Evidence.*

   In an action. for malicious prosecution on a charge of larceny, evidence of embezzlement of the property alleged to have been stolen, which may have occurred in a county other than the one in which the criminal proceeding was instituted, is admissible, and it is reversible error, after admission thereof, to give instructions deny-ing to it any legal effect.   (p. 82).

4. SAME—*Probable Cause—Instructions.*

   Instructions to the jury in such a case, telling them they may ignore or disregard a fact which constitutes an element of probable cause or that such fact alone does not amount to probable cause, are erroneous and misleading.   (p. 83).

(WILLIAMS and MASON, JUDGES, absent.)

Error to Circuit Court, Harrison County.

Action by Dillon L. Swick against Alvin D. Bassell.   Judg-ment for plaintiff, and defendant brings error.

*Reversed, remanded, and new trial awarded.*

*Will E. Morris* and *E. D. Lewis,* for plaintiff in error.

*Harvey W. Harmer* and *J. Howard Holt,* for defendant in error.

Poffenbarger, Judge:

On this writ of error to a judgment for the sum of $1,200.00, rendered on the verdict of a jury, in an action for malicious prosecution, the only meritorious inquiries presented, pertain to rulings of the court respecting the giving of several instructions for the plaintiff and the refusal of one asked for by the defendant.

On a complaint charging the plaintiff with the larceny of a pair of leggings, a pair of riding spurs, two pony blankets and a cane, made by the defendant and filed with a justice of the peace, a warrant was issued, under which the plaintiff was arrested, on the 24th day of January, 1912. On the hearing by the justice, he was acquitted and discharged. The property in question belonged to the defendant and was in the possession of the plaintiff, at the time of the complaint and arrest. After his arrest, he produced and returned it. Whether it went into his possession with the knowledge and consent of the defendant, was one of the issues in the case. Another was the intention with which he had obtained possession thereof. Bassell was a horse fancier and owned several valuable animals, among which were some ponies. Swick was a horse trainer. They conceived the idea of conducting a horse show, one feature of which was diving by a pony from a ladder into a tank of water. Bassell furnished the horses and Swick the ladder, and the tank seems to have been subsequently procured. Swick had no money and Bassell financed the operations. One unsuccessful exhibition was given at Cumberland, Maryland, and another at Clarksburg. At the close of the Clarksburg exhibition, they decided to quit for that year and possibly for all time. The horses and paraphernalia were taken from Clarksburg to Bassell's farm. The articles alleged to have been stolen were in a box and a trunk, which Swick took away with him, when he left Bassell's place for his home in Barbour County. He says Bassell knew they were in the trunk and box and assented to his taking them away. This Bassell emphatically denies. Swick's explanation is that the articles had been packed at Clarksburg by a servant, one Pau, who was not at Bassell's at the time at which Swick left and who had the key to the

box and trunk. Some of Swick's things were left at Bassell's, the ladder, a saddle and some other articles. Bassell says he missed his property some time after Swick had gone and that, after an unsuccessful search for them, he wrote Swick a letter in which he demanded the return thereof, on the assumption that he had them. To this letter, written on the 9th day of Dec., 1911, Swick replied on the 19th day of Dec., 1911, but did not mention the articles. Bassell's letter had covered a good deal of ground and, among other things, he had requested Swick to come back and work for him. He also claimed to have loaned Swick $115.00 with which to pay purchase money of, or indebtedness on, his house. Swick utterly denied the indebtedness, charged Bassell with failure to pay bills and other misconduct and flatly refused to return. On the 10th day of January, 1912, Bassell wrote him again, demanding the return of the articles and threatening criminal prosecution, on his failure to return them. He says he received no reply to this letter. Swick swore he had replied to it but was unable to produce any copy of his alleged letter, and the court permitted him to testify that, in it, he had expressed his willingness to return Bassell's property, on Bassell's return of his.

Assuming the tendency of the evidence to sustain them, the defendant interposed two grounds of defense: (1), common law larceny of the articles, a taking thereof, without his knowledge or consent, against his will and with criminal intent; and (2), proof of a *prima facie* case of embezzlement, made out under sec. 19, ch. 145 of the Code, declaring a presumption of guilt of the offense, upon proof of failure of an agent to restore or account for the principal's property in his possession, within thirty days after a proper demand therefor has been made.

Several of the instructions given for the plaintiff fairly submitted the inquiry as to whether there had been a bailment of the property; in other words, whether Bassell had knowingly permitted Swick to take it with him. These wholly ignored the evidence of embezzlement. This omission, the argument for the defendant excuses on the ground that the embezzlement, if any, did not occur in the county in which the prosecution was instituted, Harrison; because Swick had the prop

erty in Barbour County, when the demand for its return was made. This raises novel questions. Where was the offense committed? If one was committed in Barbour County and the prosecution in Harrison would have failed, only because commenced in the wrong county, was there probable cause?

Sec. 19, ch. 145, ( ode, ser. sec. 5210, declares that, if, in the prosecution of an agent for embezzlement, it appears that property of the principal is unlawfully withheld, and the agent has failed or refused to restore or account for the same, within thirty days after proper demand has been made therefor, the agent shall be presumed to be guilty of the offense, but may rebut the presumption by proof. If there was a bailment, binding Swick to return the property to Bassell in Harrison County, it may be that his failure to do so, upon proper demand and within the time prescribed by the statute, would make him presumptively guilty of an offense in Harrison County. But it is unnecessary to say whether it would or not. Assuming the offense, if any, to have been committed in Barbour County and to have been the same offense for which the prosecution was instituted in Harrison, there would have been probable cause. It would be a monstrous wrong to permit a guilty man to recover damages in an action for malicious prosecution, on account of a prosecution that failed only on account of an error in procedure, such as commencement thereof in the wrong court or wrong county. On this question, authority is meager, but *O'Brien* v. *Frasier,* 47 N. J. L. 349, deals with it and seems to be in line with the view here expressed. The substance of the opinion in that case is set forth in the syllabus as follows: "In a suit of this kind, when the defense consisted in the circumstance that the defendant had intended to charge a different crime from that contained in his affidavit, which had been erroneously drawn by the magistrate, it is competent for the defendant to prove that the crime so intended to be imputed was true, to the best of his belief." In such a case, all the elements of probable cause are present. The prosecutor has reasonable ground for belief that an offense has been committed and believes it has, but he fails to convict on account of an error in procedure. Many authorities say there may be probable cause, notwithstanding an acquittal. Closely allied to probable cause, under

such circumstances, is lack of malice. The guilt of the accused strongly tends to disprove malice, an essential element of malicious prosecution.

On an indictment for common law larceny, evidence of embezzlement is admissible and a conviction of that offense may be had. *State* v. *De Berry,* 75 W. Va. 632, 84 S. E. 508. Swick's possession and unlawful withholding of the property at the time of his arrest and trial, more than thirty days after a demand therefor, if there was a proper demand, was evidence of embezzlement, sufficient to sustain a conviction, in the absence of rebutting evidence. It made a *prima facie* case of guilt, under the operation of the statute to which reference has been made. The statute does not prescribe the character of the demand, but, of course, it must be such as to apprise the agent of the principal's desire for restoration of the property, and its sufficiency in that respect, is a question for the jury, when there is substantial evidence of a demand. In his first letter, Bassell said: ''Wish you would send the Ponie Blanketts and my leggins and spurrs and my cain, etc. by express as I need them;'' and, after references to other matters, he repeated the request in these words: ''Send all my things.'' In our opinion, this constitutes evidence of a demand, notwithstanding the letter was lengthy. That it sought to impose the duty of packing and shipping the articles, upon the agent or bailee, did not render it insufficient. If Bassell had gone to his home and personally demanded them, Swick would have had to get them for him. Moreover, it was his duty to send them back to the owner.

Evidence sufficient, in the absence of explanation or rebuttal, to make a *prima facie* case under the statute and sus· tain a verdict of conviction, tends to prove facts constituting probable cause. What the facts were was a question for the jury. Whether a given state of facts constituted probable cause was a question for the court, but it could not determine issues dependent upon conflicting evidence. Under such circumstances, the court can do no more, in its instructions, than tell the jury what facts, if found by them, constitute probable cause. *Bailey* v. *Gollehon,* 76 W. Va. 322, 85 S. E. 556. Notwithstanding the evidence of Bassell's demand and the lapse of thirty days, there may have been no guilt on the part ·

of Swick and Bassell's knowledge of other facts may have deprived him of the status of a prosecutor having probable cause, but there was evidence tending to prove probable cause, even though there was a bailment of the property.

All of this evidence, instructions Nos. 2, 4 and 7, given at the instance of the plaintiff, ignored. Telling the jury, in substance, there was no probable cause, if Swick took the property, with Bassell's knowledge and consent, they were highly. misleading and, therefore, erroneous. Instructions Nos. 17 and 19, given for the plaintiff, were too narrow and restrictive in their scope. They told the jury Swick's failure to reply to Bassell's request for the property did not constitute probable cause. His silence and failure to restore the property, unexplained, raised a presumption of guilt which it was incumbent upon him to rebut. These instructions ignored the presumption and relieved him of the burden of exculpation. By this, we do not mean to say the right of recovery here depends upon the guilt or innocense of Swick. The issue is whether Bassell had probable cause for prosecuting, but that depends upon the jury's findings as to facts within Bassell's knowledge at the time he started the proceeding.

The rulings upon instructions pertaining to action under advice of the prosecuting attorney, conform to the law as enunciated in *Vinal v. Core,* 18 W. Va. 1, and *Bailey* v. *Gollehon,* cited, and we decline to overrule the decisions in those cases.

In none of the other instructions given, is any departure from settled priciples of law perceived.

Swick's testimony as to the contents of the letter he claims to have written, was properly admitted. He swears he wrote the letter and retained no copy. This made an ample basis for admission of oral testimony as to contents.

For the erroneous rulings on instructions, here noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed, remanded and new trial awarded.*