185 So. 774

**DAVIS v. STATE.**

**7 Div. 543.**

Supreme Court of Alabama.

Dec. 22, 1938.

Rehearing Denied Jan. 26, 1939.

144

· ·Motley· & Motley, of Gadsden, for petitioner.

A. A. Carmichael, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

BOULDIN, Justice.

Section 3962, Code of 1923, under which petitioner was indicted and convicted, reads: "Whoever, being the administrator of the estate of the decedent, or the executor of a last will, or the guardian of any minor or insane person, or a trustee or other person acting in any fiduciary capacity, without good cause, fails or refuses, when legally required by the proper person or authority, or on demand of a surety on the bond of any such administrator, executor or guardian, to account for or pay over to such person or persons as may be lawfully entitled to receive the same, any money, chose in action, or other property, which may have come into his hands by virtue of his office, duty or trust, shall be deemed guilty of embezzlement, and, on conviction, shall be punished as if he had stolen the same."

This Section first appeared in the present Code, and has not heretofore been considered. It is now challenged as void in that it violates Section 20 of the Constitution of 1901, appearing in the bill of rights, saying: "That no person shall be imprisoned for debt."

If the above statute be construed to mean that every executor, administrator, guardian, trustee or fiduciary, who, upon final settlement of his trust, has a decree entered against him for the payment of money, and fails to pay same on demand, is branded as a criminal, guilty of embezzlement, subject to imprisonment in the penitentiary, we would be impelled to hold it is violative of the constitutional guaranty against imprisonment for debt.

"Without good cause" is made one of the elements of the offense. The statute does not define "good cause," but if defined to include the constitutional guaranty against imprisonment for debt among the good causes shielding the accused from conviction for crime, this saving clause may save the statute. Our statutes should be construed so as to give them a field of operation within constitutional bounds if they reasonably admit of such construction.

Broadly speaking, debt within the meaning of our bill of rights includes monies due under contract, or as damages for breach of any form of contractual obligation. It does not inhibit punishment for tortious acts, although committed in the procurement of contracts under which the defrauded party suffers loss.—11 Amer. Juris, p. 1126 et seq., § 327.

In Carr v. State, 106 Ala. 35, 17 So. 350, 34 L.R.A. 634, 54 Am.St.Rep. 17, this court considered a statute imputing crime to a banker who receives deposits knowing the bank to be insolvent.

It was pointed out that former constitutions had excepted from immunity cases of fraud, and declared [page 351]: "That the elimination of the exception as to frauds was a pregnant omission, which

left the guaranty of immunity from imprisonment to the debtor to apply to all cases of debt, whether they involved fraud or not. So that the statute we are considering can derive no aid from the idea that the receipt of a deposit by a banker under the circumstances stated is a fraud, and hence that the transaction would constitute 'a case of fraud,' since even in such cases there can be no imprisonment for debt."

The punishment under the statute there considered looked to the collection of the deposit. It went so far as to provide that payment at any time before conviction should be a good defense. It was not a statute to punish the wrongful and fraudulent act of the banker; but one wherein the depositor, standing on the contract creating the relation of debtor and creditor, was given the benefit of criminal action to enforce the obligation of the contract, the payment of debt.

The case is clear authority to the effect that in Alabama non-performance of the obligations of a contract cannot be made a crime because fraud entered into its procurement. If the party defrauded stands on his contract, the criminal law cannot be used to enforce its obligation.

Fraud and misrepresentation resulting in injury to another may be made criminal; and it matters not that such fraud was perpetrated in the procurement of a contract under which the party injured parted with value. But crime cannot be imputed to the breach of contract, non-performance, or non-payment, as the case may be. The crime must be predicated on the tortious act, not on failure to perform the contract, although induced by fraud.

The Carr Case has been differentiated in later cases. Chauncey v. State, 130 Ala. 71, 30 So. 403, 89 Am.St.Rep. 17; Goolsby v. State, 213 Ala. 351, 104 So. 901. See 76 A.L.R. 533. See, also, Bailey v. State, 161 Ala. 75, 49 So. 886, reversed in 219 U.S. 219, 250, 31 S.Ct. 145; 55 L.Ed. 191 on grounds of denial of due process by statutory presumption and rules of evidence.

The statute now before us deals with all trustees and fiduciaries.

As relates to guardians, deriving authority from lawful appointment, it may be observed a guardianship involves the taking possession of and management of the estate of another unable to act for himself.

The law vests such title in the guardian as essential to the proper performance of the duties of the trust. Essentially the duty of a guardian is the performance of a personal service for the ward, management of his estate.

He is required to invest the funds, to observe statutory requirements touching the security he takes, the collection of interest, etc. By acceptance of the appointment he assumes a contractual obligation of faithful performance.

The books abound with cases wherein a guardian is held liable on settlement for losses, or even failure to increase the ward's estate by frugal and vigilant management, cases in which no tortious conduct appears as a basis for imprisonment for crime.

Likewise administrators are charged ofttimes with difficult and exacting duties in getting possession of the property of the estate, collecting debts more or less doubtful, payment of lawful debts, holding expenses within reasonable limits, and finally accounting and making distribution. Needless for us to undertake to summarize the many cases in which, for lack of the full measure of judgment and vigilance the law exacts, or from mistake of law, an administrator is decreed to pay a balance found due on final settlement.

Touching private fiduciaries and trustees, included in this statute, their obligations are essentially contractual.

But in all these cases the subject matter of the trust is the property of another in beneficial ownership.

Any conversion of such funds or properties to the use of the trustee or of a third person is a devastavit, a tort, to which the law may and often does impute crime.

The law makers may declare any wrongful, tortious conduct criminal, and impose penalties leading to imprisonment. This is not imprisonment for debt.

In Fretwell et al. v. McLemore et al., 52 Ala. 124, 143, a distinction is drawn between a devastavit, a tort, at common law and cases of breach of trust without more. Says Chief Justice Brickell: "The general rule,

of the common law is, that breaches of trust are mere simple contract debts."

■ Under the statute now for construction, the non-payment of the sum due when ascertained as the law directs, and demand has been made, is the event on which the crime becomes complete. But we think it inaccurate to say non-payment is the gist of the crime. If so, the statute must fall. When a guardianship is settled and a balance is found and decreed, as due the ward, if the guardian has the fund in hand and refuses to pay it over this is a wrongful conversion of the fund. If he has it not, then the inquiry is, why?

Then comes the issue of good excuse vel non. The statute imposes no presumption on that issue. If there has been no conversion or other wrongful disposition or dissipation of the fund, and the balance represents no more than a breach of contractual obligations imposed by trust relations, this is a good excuse, because under the constitutional guaranty against imprisonment for debt it is made a good excuse.

■ On this review by certiorari we look alone to the opinion of the Court of Appeals for the facts of the case. Suffice to say, that if it appeared that this guardian received from a court officer the full sum of $1,000 as the property of his wards, acquired possession and management on his undertaking to deal with it as the property of his wards, he could not set up a claim to a part of it as his own to justify his conversion of same to his own use.

So understanding the opinion, the writ is denied.

Writ denied.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

On Rehearing.

PER CURIAM.
Application overruled.

GARDNER, THOMAS, BOULDIN, and FOSTER, JJ., concur.