263 So.2d 696

Danny HILL

v.

STATE.

8 Div. 227.

Court of Criminal Appeals of Alabama.

June 13, 1972.

William J. Baxley, Atty. Gen. and Richard F. Calhoun, Asst. Atty. Gen., for the State.

Arthur G. Groover, Hartselle, for appellant.

TYSON, Judge.

The indictment consists of three counts, charging appellant with grand larceny, buying, receiving, concealing or aiding in

**242**

concealing stolen property, and embezzlement. Jury trial resulted in a verdict of guilty of embezzlement. Judgment set sentence at eighteen months imprisonment.

Prosecution's witness, H. H. Anders, testified that he operated a used car business in Hartselle, Alabama; that he knew the accused, Danny Hill, and had been knowing him for several years; and that Hill had worked for him for about five or six months in 1969 at his business in Hartselle. In October or November of 1969, Hill purchased a 1956 Chevrolet from Anders while working at his used car lot, but Hill wrecked the Chevrolet and asked Anders for another car. Anders testified he loaned Hill a 1962 Pontiac and told him to drive it for a week "until he got a payday at the Ford place and buy it if he liked it."

On December 2, 1969, Hill brought the Pontiac back, after keeping it about a week, and said that it was not any good and he wanted another car. Anders had a 1962 repossessed Valiant which he offered to Hill "to try it out and see if he wanted it, and if he did he would pay me $50.00 down and I would sell it to him."

It was Anders' testimony that appellant was to take the Valiant on a "try out basis," and that the appellant did not pay him any money upon receipt of the vehicle, nor was there a contract of any kind. Anders said he gave the keys to appellant, and that was the last he saw of the Valiant.

It was Anders' testimony that he tried to locate appellant and that one of his employees, one Jack Brown, did in fact locate Hill some two months after the transaction occurred.

Anders also testified that "after they arrested him he come up there and wanted to pay it out."

On cross-examination, Anders stated that he had loaned the appellant cars on several occasions when the appellant was working for him.

Appellant took the stand in his own behalf. He testified that he used to work for Mr. Anders and had known him for quite some time; that before the incident in question had occurred, Mr. Anders had sold or loaned him used cars on several occasions, and that there had never been any question about those transactions. He testified that he received a receipt for the 1962 Pontiac, but that he had misplaced it.

It was appellant's testimony that on December 2, 1969, he drove the Pontiac to Anders' car lot for the purpose of trading it because it was "in bad shape." He stated that he told Anders he wanted to trade the Pontiac and Anders "told me to look at what he had out there and then he said he had that 1962 Valiant out there just repossessed, I could look at it and try it out." Appellant said it was his understanding he was trading the Pontiac for the Valiant. Anders retained no security interest in the Valiant automobile.

Appellant stated he had returned to the used car lot on several occasions since the incident in question, and Anders had not mentioned the car until recently, when he (appellant) brought up the matter. And further, that since the time in question, he had traded a box of wrenches to Anders in exchange for a 1963 Ford.

Jack Brown, a part-time employee of Anders, testified that on December 2, 1969, he saw appellant drive a 1962 Pontiac on Anders' lot. He heard appellant say, concerning the Pontiac, that "the motor was ruint in it and it was knocking and he wanted to try another one out." Brown said he saw appellant leaving the car lot in the Valiant. Subsequent to this, Brown, apparently under Anders' orders, located appellant at a trailer court where he was living, and, according to Brown, "told Danny that Mr. Anders wanted the car back and he said it was sitting over at the foot of the hill, tore up and I asked him where it was, and we would pull it in and save a lot of trouble, but he never would tell me where it was." Hill said "he would straighten it out with Mr. Anders himself."

There was testimony by a Stanley Kelsco who said he was at the lot on Decem-

ber 2, 1969, when this incident occurred. Kelsco saw the appellant and Anders engaged in a conversation concerning cars, but was not close enough to hear the details. He did see Anders give some keys to appellant.

Leldon Barrett, another witness for the State, testified that he saw the appellant drive on the lot on December 2, 1969, and he assisted appellant in transferring his personal belongings from the Pontiac to the Valiant. He did not hear the conversation between the appellant and Anders.

No motion for new trial was filed in this cause.

## I

After the State had rested its case in chief, the defendant moved to exclude the State's evidence on the ground that "it prima facially doesn't show a case against the defendant, and furthermore on every count of the indictment, it shows a three hundred dollars or more, and that was never proved at all that it was stealing a car in the value of three hundred dollars, nor would there be an employment for three hundred dollars or more."

■ The court allowed the State to re-open its case, over objection, for the purpose of proving the value of the car. The reception of additional evidence after the State has closed, but before final argument, to supply an omission, is within the discretion of the trial judge. Title 7, Section 252, Code of Alabama 1940 (Recompiled 1958); Miller v. State, 21 Ala.App. 653, 111 So. 648.

Following testimony as to the value of the car, the defendant again moved to exclude State's evidence "in that no crime has been shown by their case." Inasmuch as the evidence would afford a reasonable inference to support a finding by the jury that the crime of grand larceny, or larceny by trick or fraud, was committed by appellant, the trial court was not in error in overruling appellant's motion. Reynolds v.

State, 31 Ala.App. 259, 15 So.2d 600; Sullivan v. State, 43 Ala.App. 302, 189 So.2d 593; Turner v. State, 266 Ala. 250, 96 So. 2d 303.

## II

Appellant cites as error the refusal of the trial court to give the requested affirmative charge as to Count III of the indictment, charging embezzlement.

Title 7, Section 273, Code of Alabama 1940 (Recompiled 1958), reads as follows:

"*Charges moved for by the parties.*— Charges moved for by either party must be in writing, and must be given or refused in the terms in which they are written; and it is the duty of the judge to write 'given' or 'refused,' as the case may be, on the document, and sign his name thereto; which thereby becomes a part of the record."

■ The record does not show that the trial judge marked any of the charges "given" or "refused," nor did he endorse such charges in any manner, even though the court read the charges to the jury. Counsel for appellant does not argue in brief that the trial judge refused to endorse the requested charges. Having failed to comply with the statutory requisites, we cannot review the refused affirmative charge, or any other refused charges, as such are not considered as part of the record. Fendley v. State, 36 Ala.App. 149, 53 So.2d 397; Jackson v. State, 32 Ala. App. 388, 26 So.2d 423; Mason v. State, 16 Ala.App. 405, 78 So. 321. Further, by the clerk inserting the charges in the record, such does not make them a part of same, lacking the requisite endorsement of the trial judge. Berry v. State, 231 Ala. 437, 165 So. 97; Gable v. State, 31 Ala.App. 280, 15 So.2d 594.

## III

■ Although at no time did appellant's counsel challenge the sufficiency of the indictment at the trial level, we note here:

that the particular count in the indictment to which the jury referred their verdict fails to allege an essential element of the offense of embezzlement. Count III of the indictment reads as follows:

#### "Count III

"The Grand Jury of said county further charge that before the finding of this indictment Danny Hill, whose name is to the Grand Jury otherwise unknown, did embezzle or fraudulently convert to his own use, with intent to embezzle or fraudulently convert to his own use, a motor vehicle, to-wit, one 1962 Valiant automobile of the value of $300.00, the personal property of H. H. Anders, against the peace and dignity of the State of Alabama."

The indictment fails to specify the relationship between the appellant and the prosecuting witness, Anders, at the time of the alleged commission of the offense charged. Title 14, Section 126, Code of Alabama 1940 (Recompiled 1958) ; Benefield v. State, 286 Ala. 722, 246 So.2d 483.

The Supreme Court of Alabama in Holt v. State, 86 Ala. 599, 5 So. 793, stated:

"The general rule in criminal pleading requires that every fact and circumstance which enters into and constitutes an essential ingredient of the offense shall be set forth in the indictment; otherwise no offense is charged. If the indictment is framed under a statute which defines the offense created, and prescribes its constituents, it must allege in the words of the statute, or other words equivalent in meaning, all the statutory elements which are essentially descriptive of the offense. Davis v. State, 68 Ala. 58; McCord v. State, 79 Ala. 269. . . ."

In that case the indictment was held fatally defective although no demurrer or other objection was interposed at trial level by the appellant.

In Dowdy v. State, 22 Ala.App. 514, 117 So. 489, we find the following:

"This court has held, in consonance with prior holdings of the Supreme Court that 'a mere servant or employee of an incorporated company who converts money or property coming into his possession by virtue of his employment would not be guilty of embezzlement' under the Code section above referred to. Also that the fact 'that the defendant is an officer, agent, or clerk of an incorporated company is one of the essential elements of the offense sought to be charged,' and the omission of this essential element of the offense in the charge will be taken notice of by this court, even in the absence of a demurrer to the indictment (or, as in this case, to the complaint by affidavit). The defect being of substance and involving an element of the offense, the indictment (affidavit) will not support a judgment. . . ."

In Likos v. State, 28 Ala.App. 231, 182 So. 81, the rule was thus stated:

"The defect, here under discussion, being of substance and involving an element of the offense, the indictment will not support a judgment, and it is the duty of this court to notice it, although no objection was taken to the indictment in the trial court. . . ."

In the case at bar, the defect being one of substance and involving a material element of the offense, Count III of the indictment will not support judgment.

■ In view of the likelihood of a retrial, we feel it necessary at this point to state that in order to convict the appellant of the statutory offense of embezzlement, it is essential that the State establish beyond a reasonable doubt the requisite relationship between the appellant and prosecuting witness, Anders; that the Valiant automobile came into appellant's possession by virtue of such relationship; and that appellant embezzled or fraudulently converted the car to his own use, or the use of

another, or fraudulently secreted it with intent to convert it to his own use, or the use of another. Title 14, Section 126, Code of Alabama 1940 (Recompiled 1958); Mauldin v. State, 28 Ala.App. 30, 177 So. 309; Benefield v. State, 286 Ala. 722, 246 So.2d 483.

For the error shown the judgment is due to be reversed and the cause is hereby remanded.

Reversed and remanded.

PRICE, P. J., and HARRIS, J., concur; CATES, J., concurs specially as per opinion; ALMON, J., concurs in the result.

CATES, Judge (concurring in the result).

I consider that my brother, TYSON, has reached the correct result.

I agree with Parts II and III of his opinion. However, there are several points of law with which I cannot agree:

1. Clearly I think that the owner, Anders, gave his consent for Hill to take the car. Nor did the State offer any proof of Hill's contemporaneous intent to asport the car. Coates v. State, 36 Ala.App. 371, 56 So.2d 383, says:

"Since larceny is a criminal trespass on the right of possession, it is necessary that the taking should be without the consent of the possessor. The burden of proof of this essential element of the offense is on the prosecution."

The most that is shown by Ander's testimony is that Hill (if the car suited him after the indeterminate trial period) promised to pay Anders $50.

2. Constitution, 1901, § 20 reads:

"That no person shall be imprisoned for debt."

See Carr v. State, 106 Ala. 35, 17 So. 350. Of that case we find in Davis v. State, 237 Ala. 143, 185 So. 774, the following:

"The case is clear authority to the effect that in Alabama non-performance of the obligations of a contract cannot be made a crime because fraud entered into its procurement. If the party defrauded stands on his contract, the criminal law cannot be used to enforce its obligation.

Fraud and misrepresentation resulting in injury to another may be made criminal; and it matters not that such fraud was perpetrated in the procurement of a contract under which the party injured parted with value. But crime cannot be imputed to the breach of contract, nonperformance, or non-payment, as the case may be. The crime must be predicated on the tortious act, not on failure to perform the contract, although induced by fraud."

To me under the record here Anders sold the car when the "try-out" period ran out. Based on the earlier transaction we might guess that one week was set up by the conduct of the parties as a reasonable "try-out" time. At the end of that time, whatever its span, Hill then owed $50 to Anders.

Without proof of fraud to make a sham of Hill's purchase, I see no larceny.

3. Since the State's evidence made out a sale of the car to Hill, I perceive no element which would have supported embezzlement by Hill. See Benefield v. State, 286 Ala. 722, 246 So.2d 483. Therefore, the validity vel non of the indictment is immaterial except propter aliud examen. The motion to exclude should have been granted as to all counts in the indictment.

I agree that some employment or agency must be averred in the absence of a code form indictment for embezzlement.

For the foregoing reasons I vote to reverse because I think that the trial judge should have granted the motion to exclude the evidence.